IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CHRISTOPHER M. PAYNE, | ) | 4:11CV3017 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| FRED BRITTEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff filed his Complaint in this matter on February 11, 2011. (Filing No. 1.) Plaintiff has previously been given leave to proceed in forma pauperis. (Filing No. 7.) Also pending are Plaintiff's Praecipe for Summons (filing no. 6), Motion for Temporary Restraining Order (filing no. 11), Amended Motion for Temporary Restraining Order (filing no. 19) and Motion for Production of Documents (filing no. 15). The court now conducts an initial review of the Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

I.   **SUMMARY OF COMPLAINT**

Plaintiff filed his Complaint on February 11, 2011, against Federal Bureau of Investigations Agent Jerry Bell ("Bell") and six individual Tecumseh State Correctional Institution ("TSCI") employees (collectively the "TSCI Defendants").[1] (Filing No. 1 at CM/ECF p. 1; Filing No. 18 at CM/ECF pp. 1-2.) Plaintiff sues each of these Defendants in both their individual and official capacities. (*Id.* at CM/ECF p. 7.) Plaintiff is currently confined at TSCI in Tecumseh, Nebraska. (*Id.*; *see also* Docket Sheet.)

---

[1]Plaintiff also filed an Amended Complaint on June 2, 2011. (Filing No. 18.) The court will consider Plaintiff's Amended Complaint "as supplemental to, rather than as superseding" his original pleading. NECivR 15.1.

Condensed and summarized, Plaintiff alleges that the TSCI Defendants are reading and censoring both his incoming and outgoing mail in violation of his constitutional rights. (*Id*. at CM/ECF pp. 3-7.) More specifically, Plaintiff alleges that the TSCI Defendants are censoring his mail at the request of Bell, who is investigating Plaintiff for alleged involvement in "illegal activity."[2] (*Id*. at CM/ECF pp. 6, 12.) Plaintiff received notice that Defendants were detaining his mail and exhausted his administrative remedies through TSCI's grievance procedures. (*Id*. at CM/ECF pp. 2-3, 12-27.) Plaintiff seeks injunctive relief in the form of a court order that directs Defendants to stop censoring his mail. (*Id*. at CM/ECF p. 9.) Plaintiff also seeks monetary relief in the form of compensatory and punitive damages. (*Id*. at CM/ECF pp. 9-10: Filing No. 18 at CM/ECF pp. 16-17.)

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A.

A pro se plaintiff must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed" for failing to state a claim upon which relief can be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct.

---

[2]Plaintiff mentions that this illegal activity may be allegations of "child enticement." (Filing No. 1 at CM/ECF p. 3.)

1937, 1950 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043-44 (8th Cir. 2002) (citations omitted).

### III. DISCUSSION OF CLAIMS

   *A.  Plaintiff's Monetary Damages Claims against the TSCI Defendants in Their Official Capacities*

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.,* 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon,* 656 F.2d 372, 377-78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 which seek equitable relief from state employee defendants acting in their official capacity.

Here, Plaintiff sues several individual state employees in both their individual and official capacities. (Filing No. 1 at CM/ECF pp. 1, 7; Filing No. 18 at CM/ECF p. 1.) As set forth above, the Eleventh Amendment bars claims for damages by private parties against employees of a state sued in their official capacities. Consequently, Plaintiff's monetary damages claims against the TSCI Defendants are

3

barred by the Eleventh Amendment. Although Plaintiff's monetary damages claims against the TSCI Defendants are barred, the Eleventh Amendment does not bar Plaintiff's equitable relief claims against the TSCI Defendants in their official capacities or Plaintiff's claims against the TSCI Defendants in their individual capacities.

### B. Plaintiff's First Amendment Claims Against the TSCI Defendants

Liberally construed, Plaintiff has asserted that the TSCI Defendants are violating his rights to send and receive mail. "While prisoners have a right to send and receive mail, prison officials have a legitimate interest in monitoring that mail for security reasons." *Ortiz v. Fort Dodge Correctional Facility*, 368 F.3d 1024, 1026 (8th Cir. 2004); *Thongvanh v. Thalacker*, 17 F.3d 256, 258-59 (8th Cir. 1994) (stating that the prison's responsibility to maintain order may include reading incoming and outgoing mail). Prison officials may justifiably censor outgoing mail concerning escape plans, contraband, threats or evidence of illegal activity. *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993); *see also Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (concluding that restrictions on inmate mail are justified only if they further an important or substantial government interest unrelated to the suppression of expression, such as security, order, and rehabilitation), *limited by Thornburgh v. Abbott*, 490 U.S. 401, 415-19 (1989) (limiting the *Martinez* analysis to outgoing prison mail). Because of the greater security risks associated with incoming mail, restrictions on incoming inmate mail are justified if they reasonably relate to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Here, the TSCI Defendants are allegedly censoring Plaintiff's incoming and outgoing mail because they are cooperating with a criminal investigation regarding Plaintiff's involvement in "illegal activity." (Filing No. 1 at CM/ECF pp. 3-7.) However, Plaintiff asserts that he is not involved in any illegal activity and that his mail is being held merely to censor his communications. (*Id*. at CM/ECF pp. 3-6.)

4

Liberally construed, Plaintiff has alleged sufficient facts to "nudge" his First Amendment mail rights claims against the TSCI Defendants across the line from conceivable to plausible. However, the court cautions Plaintiff that this is only a preliminary determination based only on the allegations of the Complaint and is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

### C. Plaintiff's Fourth Amendment Claims Against the TSCI Defendants

Liberally construed, Plaintiff also asserts a Fourth Amendment claim against th TSCI Defendants for seizing his mail without a warrant. (*Id*. at CM/ECF pp. 6-7.) The Fourth Amendment protects the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. U.S. Const. amend. IV. However, prisoners have very limited Fourth Amendment rights while incarcerated. *See, e.g.,* Hudson v. Palmer, 468 U.S. 517 (1984) (finding that inmate had no reasonable expectation of privacy in his prison cell entitling him to protection of Fourth Amendment). Indeed, the Eighth Circuit has held that prison officials do not violate an inmate's Fourth Amendment rights by inspecting the inmate's mail. *See* United States v. Kelton, 791 F.2d 101, 103 (8th Cir. 1986) (prisoner's Fourth Amendment rights were not violated when prison official inspected and copied prisoner's outgoing mail); *see also* Smith, 995 F.2d at 830 (prison officials are justified in screening outgoing mail for escape plans, contraband, threats, or evidence of illegal activity); United States v. Vallez, 653 F.2d 403, 406 (9th Cir. 1981) (concluding that a warrantless seizure of a sealed letter is valid if it serves a "justifiable purpose of imprisonment or prison security"), *receded from on other grounds by* United States v. Goseyun, 789 F.2d 1386, 1387 (9th Cir. 1986) (per curiam).

Again, Plaintiff asserts that he is not involved in any illegal activity and that his mail is being held merely to censor his communications. (Filing No. 1 at CM/ECF pp. 3-6.) Liberally construed, Plaintiff has alleged sufficient facts to "nudge" his

5

Fourth Amendment claim against the TSCI Defendants across the line from conceivable to plausible. As with Plaintiff's First Amendment claims, the court cautions Plaintiff that this is only a preliminary determination based only on the allegations of the Complaint and is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

> D.  *Plaintiff's Fourteenth Amendment Procedural Due Process Claims Against the TSCI Defendants and Bell*

Liberally construed, Plaintiff alleges that Defendants are detaining his mail without due process. (*Id*. at CM/ECF pp. 6-7.) The decision to censor or withhold delivery of an inmate's mail must be accompanied by minimum procedural safeguards, which include notice to the inmate that correspondence was rejected and an opportunity to protest the decision. *Bonner v. Outlaw*, 552 F.3d 673, 676-77 (8th Cir. 2009). Here, Plaintiff was notified that his mail was detained. (Filing No. 1 at CM/ECF p. 3.) In addition, he was given an opportunity, through TSCI's grievance procedure, to protest the decision. (Filing No. 1 at CM/ECF pp. 2, 12-27.) In light of this, Plaintiff has failed to allege sufficient facts for the court to reasonably infer that Defendants violated his Fourteenth Amendment due process rights. Accordingly, Plaintiff's procedural due process claims against Defendants are dismissed.

> E.  *Plaintiff's Monetary Damages Claims Against Bell in his Official Capacity*

As a sovereign power, the United States is immune from suit unless it consents. *Hart v. United States*, 630 F.3d 1085, 1088 (8th Cir. 2011). It is well settled that the United States has not waived its sovereign immunity for suits seeking damages based on alleged constitutional violations. *See, e.g., Thomas-Lazear v. F.B.I.*, 851 F.2d 1202, 1207 (9th Cir. 1988) ("[T]he United States has not waived its sovereign immunity in actions seeking damages for constitutional violations."); *FDIC v. Meyer,*

6

510 U.S. 471, 475-78 (1994) (declining to recognize a direct action for damages against federal agencies). The shield of sovereign immunity also protects United States agencies and officers acting in their official capacities. *Meyer*, 510 U.S. at 475; *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (concluding that suits against public officials acting in their official capacities should be treated as suits against the public entity).

Plaintiff's claims against Bell in his official capacity for monetary relief, treated as claims against the United States, are barred by sovereign immunity. Therefore, Plaintiff's monetary damages claims against Bell in his official capacity are dismissed.

> F.  *Plaintiff's Remaining Claims Against Bell*

Although Plaintiff's monetary damages claims against Bell in his official capacity are barred, sovereign immunity does not bar declaratory and injunctive relief claims against federal officials acting in their official capacities. *See* 5 U.S.C. § 702 (action seeking relief other than money damages should not be dismissed because it is brought against United States); *Raz v. Lee*, 343 F.3d 936, 938 (8th Cir. 2003) (holding that § 702's waiver of sovereign immunity is not limited to cases brought under the APA, and applies to claims arising under the Constitution); *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 476 (8th Cir. 1988) (concluding § 702 waiver is not dependent on application of APA; § 702 waiver is dependent only on suit being against government and being one for non-monetary relief). Moreover, damages claims against federal officials, sued in their individual capacities, are cognizable under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens,* the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001). To state a claim for damages under *Bivens*, a

7

plaintiff must show that a federal official violated his constitutional rights. *Id.* at 66.

Here, Plaintiff alleges that Bell, a federal agent, violated Plaintiff's First and Fourth Amendment rights by directing the TSCI Defendants to censor his mail without cause. (Filing No. 1 at CM/ECF pp. 3-6.) Plaintiff seeks both monetary damages and injunctive relief against Bell. (*Id*. at CM/ECF p. 9.) Liberally construed, Plaintiff has alleged sufficient facts to "nudge" his Fourth and First Amendment claims for injunctive relief against Bell in his official capacity, and his *Bivens* claims against Bell, across the line from conceivable to plausible. Again, the court cautions Plaintiff that this is only a preliminary determination based only on the allegations of the Complaint and is not a determination of the merits of Plaintiff's claims or potential defenses thereto.[3]

## IV. MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff has also filed a Motion for Temporary Restraining Order and an

---

[3]To the extent that Plaintiff alleges state law negligence claims against Defendants for injunctive relief, or against the TSCI Defendants for monetary relief in their individual capacities, his claims may also proceed. However, to the extent that Plaintiff alleges state law negligence claims for monetary relief against Bell, his claims are barred. *See* 28 U.S.C. § 2680(b) (stating the Federal Torts Claims Act waiver of sovereign immunity shall not apply to "any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matters"); *Ruiz v. United States*, 160 F.3d 273 (5th Cir. 1998) (concluding § 2680(b) is not limited to the U.S. Postal Service, and applying postal exception to claim based on prison's failure to deliver a prisoner's mail); *Soos v. Potter*, 72 Fed. App'x 673 (9th Cir. 2003) (holding that the negligent handling of mail cannot furnish a basis for an action under *Bivens*); *United States v. Stanley*, 483 U.S. 669, 701 (1987) ("*Bivens* involves not negligent acts, but intentional constitutional violations . . . .").

8

Amended Motion for Temporary Restraining Order. (Filing Nos. 11 and 19.) The court will consider Plaintiff's Amended Motion for Temporary Restraining Order "as supplemental to, rather than as superseding" his original Motion for Temporary Restraining Order. See NECivR 15.1. The standards set forth by *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981), apply to Plaintiff's Motion. In *Dataphase*, the court, sitting *en banc*, clarified the factors district courts should consider when determining whether to grant a motion for preliminary injunctive relief:

> (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Id.* at 114. "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined . . . ." *Dataphase*, 640 F.2d at 113.

Here, the court finds that the *Dataphase* factors do not favor Plaintiff to a degree sufficient to warrant issuance of preliminary injunctive relief. Plaintiff's Motion generally restates allegations contained in his Complaint and Amended Complaint. (*See* Filing Nos. 11 and 19.) Plaintiff has also included affidavits from personal correspondents who allege that their letters to Plaintiff are being held "Pending Criminal Investigation." (*See, e.g.,* Filing Nos. 19-2 and 19-3.) Overall, however, Plaintiff's allegations and evidence do not establish that the pending criminal investigation is invalid, nor do they indicate that Plaintiff is likely to succeed on the merits of his claims. In light of this, and in consideration of all of the factors, the court sees no reason to "intervene to preserve the status quo until the merits are determined . . . ." *Dataphase*, 640 F.2d at 113.

9

## V. REQUEST FOR THE APPOINTMENT OF COUNSEL

Plaintiff also requests the appointment of counsel. (Filing No. 1 at CM/ECF pp. 10-11.) The court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel. . . . The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel . . . ." *Id.* (quotation and citation omitted). No such benefit is apparent here. Plaintiff's request for the appointment of counsel is therefore denied without prejudice to reassertion.

IT IS THEREFORE ORDERED that:

1. Plaintiff's monetary damages claims against the TSCI Defendants and Bell in their official capacities are dismissed without prejudice in accordance with this Memorandum and Order.

2. Plaintiff's Fourteenth Amendment procedural due process claims against the TSCI Defendants and Bell are dismissed without prejudice in accordance with this Memorandum and Order.

3. Plaintiff's First and Fourth Amendment claims for injunctive relief against the TSCI Defendants and Bell in their official capacities, and Plaintiff's First and Fourth Amendment against the TSCI Defendants and Bell in their individual capacities may proceed.

4. Plaintiff's Motion for Temporary Restraining Order (filing nos. 11 and 19) is denied.

5. Plaintiff's Request for the Appointment of Counsel (filing no. 1) is denied without prejudice to reassertion.

6. Plaintiff's Motion for Production of Documents (filing no. 15) is denied as premature.

7. Plaintiff's Motion for Praecipe For Summons (filing no. 6) is granted to the extent provided below.

8. To obtain service of process on Defendants, Plaintiff must complete and return the summons forms which the Clerk of the court will provide. The Clerk of the court shall send NINE (9) summons forms and NINE (9) USM-285 forms (for service on Defendants in both their individual capacities and official capacities) to Plaintiff together with a copy of this Memorandum and Order. Plaintiff shall, as soon as possible, complete the forms and send the completed forms back to the Clerk of the court. In the absence of the forms, service of process cannot occur.

9. Upon receipt of the completed forms, the Clerk of the court will sign the summons forms, to be forwarded with a copy of Plaintiff's Complaint and Amended Complaint to the U.S. Marshal for service of process. The Marshal shall serve the summons, the Complaint and the Amended Complaint without payment of costs or fees. Service may be by certified mail pursuant to Fed. R. Civ. P. 4 and Nebraska law in the discretion of the Marshal. The Clerk of the court will copy the Complaint and the Amended Complaint (filing nos. 1 and 18), Plaintiff does not need to do so.

10. Fed. R. Civ. Pro. 4 requires service of a complaint on a defendant within 120 days of filing the complaint. However, because in this order Plaintiff is informed for the first time of these requirements, Plaintiff is granted, on the court's own motion, an extension of time until 120 days from the date of this order to complete service of process.

11. Plaintiff is hereby notified that failure to obtain service of process on a defendant within 120 days of the date of this order may result in dismissal of this matter without further notice as to such defendant. A defendant has twenty (20) days

after receipt of the summons to answer or otherwise respond to a complaint.

12.  The Clerk of the Court is directed to set a pro se case management deadline in this case with the following text: "**October 24, 2011**: Check for completion of service of summons."

13.  The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this court.  Plaintiff shall keep the court informed of his current address at all times while this case is pending.  **Failure to do so may result in dismissal.**

DATED this 27th day of June 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.