IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHRISTOPHER M. PAYNE,<br><br>    Plaintiff,<br><br>  v.<br><br>FRED BRITTEN, CHRISTOPHER CONNELLY, MICHELLE HILLMAN, LEE TINKLER, JERRY BELL, MAILROOM PERSON 1, MAILROOM PERSON 2, ET. AL., BENNY NOORDHOEK, CARINA MCROBERTS, and J KUNZMAN,<br><br>    Defendants. | 4:11CV3017<br><br>MEMORANDUM AND ORDER |

## *PREFACE*

  This case has now been referred to me in the interests of judicial economy. I requested the reassignment since I also serve as the judge who manages the pro se docket for all the Nebraska judges and the pro se law clerks who assist with such cases. In doing so, I review every substantive proposed opinion before it reaches the judge to whom the case is assigned. This is done to assure consistency with respect to pro se cases. That approach was taken here, and Judge Bataillon, to whom the case was previously assigned, presumably relied upon the systematic approach our court has taken on pro se matters when he entered the opinion and preceding orders that were subsequently reversed by the Court of Appeals. In other words, Judge Bataillon presumably relied upon the fact that I reviewed the procedure and opinion used in this case.

  Given Chief Judge Riley's stinging criticism in dissent about how this case was handled at the district court level, it seemed appropriate for me to handle this case on

remand as the pro se docket manager who was originally responsible for proposing the tact taken in this court and the opinion issued by Judge Bataillon. Judge Bataillon agreed to the reassignment, and Chief Judge Smith Camp entered the order.

## BACKGROUND

A panel majority of the United States Court of Appeals has ruled:

> We reverse the district court's order converting the officials' motion to dismiss into a motion for summary judgment; vacate the district court's partial denial of the officials' motion for summary judgment; and remand with instructions for the district court to decide, consistent with this opinion, whether the officials are entitled to qualified immunity on the pleadings under Rule 12(b)(6).

*Payne v. Britten*, 749 F.3d 697, 702 (8th Cir. 2014).

I will strictly follow the foregoing instructions. That is, I now look only at Payne's pleadings (a complaint and an amended complaint) and the motion and brief submitted by the Defendants. I will *not* examine factual materials that are in the record submitted in response to the actions of this court requiring the parties (especially the Defendants) to submit factual information instead of ruling on the motion to dismiss.

The law on qualified immunity is well developed. Accordingly, I will not restate it, but rather endeavor to get at the essential questions without unnecessary discussion of, or citation to, the well understood authorities including those set out in Chief Judge Riley's dissent.

## *PLAINTIFF'S PLEADINGS*

The lawsuit was filed on February 11, 2011, with a verified complaint that alleged, among other things, that several pieces of Payne's mail, both incoming and outgoing, had been held "pending criminal investigation" since October 13, 2010. (Filing no. 1.) Then on June 2, 2011, Payne filed a verified amended complaint that became Payne's operative pleading and that alleged the following facts:

> V.   Statement of Claim
>      A.   Facts:
>      (1)   Plaintiff received multiple notices dated October 13, 2010, indicating that several pieces of mail, both incoming and outgoing had been held "pending criminal investigation";
>      (2)   Plaintiff subsequently had multiple pieces of mail similarly held;
>      (3)   Plaintiff began a series of Inmate Interview Requests to Defendant Fred Britten inquiring into the actions taken;
>      (4)   Defendant Fred Britten responded to Plaintiff's Requests indicating that all of Plaintiff's mail is "being monitored and may be held for further review, if its contents warrant same," at the request of Defendant Jerry Bell;
>      (5)   Defendant Fred Britten indicated that the nature of the investigation, which caused Defendant Jerry Bell to request that Plaintiff's mail be monitored, is allegations of "Child Enticement";
>      (6)   None [sic] of Plaintiff's correspondents is under the age of majority;
>      (7)   Plaintiff has not engaged in any illegal activities, beit Child Enticement or [sic] otherwise, as alleged by Defendants;
>      (8)   None of Plaintiff's outgoing correspondences contain information relative to such an investigation, as alleged by Defendants;
>      (9)   Plaintiff has reason to believe [sic] that none of his incoming correspondences has information relative to such an investigation;
>      (10)   Plaintiff filed numerous institutional grievances, in accordance with regulation, the most relevant of which are attached hereto;

(11)   Defendant Carina McRoberts has read, and continues to read, Plaintiff's mail, both incoming and outgoing;

(12)   Defendant Carina McRoberts has held, and continues to hold, Plaintiff's mail, both incoming and outgoing;

(13)   Defendant J. Kunzman has read, and continues to read, Plaintiff's mail, both incoming and outgoing;

(14)   Defendant J. Kunzman has held, and continues [sic] to hold, Plaintiff's mail, both incoming and outgoing;

(15)   Defendant Lee Tinkler has read, and continues to read, Plaintiff's mail, both incoming and outgoing, on information and belief;

(16)   Defendant Lee Tinkler has held, and continues to hold, Plaintiff's mail, both incoming and outgoing, on information and belief;

(17)   Defendant Christopher Connelly has read, and continues to read, Plaintiff's mail, both incoming and outgoing, on information and belief;

(18)   Defendant Christopher Connelly has read, and continues [sic] to read, Plaintiff's mail both incoming and outgoing, on information and belief;

(19)   Defendant Michele Hillman, as Associate Warden, is assigned the duty of "Mailroom Supervisor";

(20)   Defendant Michele Hillman has failed to ensure that staff follow proper policy and State law with regard to inmate mail, resulting in staff reading and holding Plaintiff's mail;

(21)   Defendant Fred Britten, as Warden of the institution, is charged with ensuring that all staff conduct themselves according to proper policy and State law, and is directly involved;

(22)   Defendant Fred Britten failed to act when informed that institutional staff had violated policy and State law;

(23)   Defendant Fred Britten continued/continues to support and allow staff to act in such a way that violates policy and State law;

(24)   Defendant Jerry Bell made such request that institutional staff violate institutional policy and State law by reading and holding Plaintiff's mail, based on information and belief;

(25)   Defendant Jerry Bell did not obtain or attempt to obtain a judicial warrant to search or seize Plaintiff's mail;

(26)   Defendant Jerry Bell has read (searched) and continues to search Plaintiff's mail, both incoming and outgoing, without such warrant;

(27) Defendant Jerry Bell has held (seized) and continues to seize Plaintiff's mail, both incoming and outgoing, without such warrant;

(28) Defendant Benny Noordhoek has acted as liaison between Defendant Jerry Bell and those Defendants working at the Tecumseh State Correctional Institution;

(29) Defendant Benny Noordhoek has been orchestrating and managing the investigation within the Department of Corrections, arranging for the reading and holding of Plaintiff's mail;

(30) Defendant Benny Noordhoek has read, and continues to read, Plaintiff's mail, both incoming and outgoing, on information and belief;

(31) Defendant Benny Noordhoek has held, and continues to hold, Plaintiff's mail, both incoming and outgoing, on information and belief;

(32) On March 14, 2011, Cpl. Cruickshank read an outgoing letter, in which Plaintiff discussed discovering the names of other members of staff who are involved in the mishandling of Plaintiff's mail, including the name of Cpl. McRoberts, and which indicated that I intended on filing this amended complaint to include the names of such persons as defendants;

(33) On March 15, 2011, Cpl. McRoberts, supervised by Cpl. Cruickshank and Defendant Lee Tinkler, assisted in a search of Plaintiff's cell;

(34) The search of Plaintiff's cell on March 15, 2011, commenced at 1035 hours and lasted in excess of two hours;

(35) On March 15, 2011, at approximately 1215 hours, Plaintiff was escorted to a holding cell by yard staff;

(36) On March 15, 2011, at approximately 1330 hours, Plaintiff was placed in the Special Management Unit (SMU) at TSCI on Immediate Segregation pending investigation and misconduct report for "possession/manufacture of a weapon";

(37) [sic] On March 17, 2011, Plaintiff received a misconduct report indicating that an "altered pencil sharpener with blade missing" was found during the March 15, 2011, search"' which resulted in Plaintiff's placement in the SMU;

(38) On March 21, 2011, a hearing was held before the Institutional Disciplinary Committee, at which the charge of possession/manufacture of dangerous contraband was dismissed;

(39) On March 28, 2011, the day prior to Plaintiff's scheduled release from the SMU, Cpl. McRoberts went to property holding and conducted a thorough [sic] search of Plaintiff's personal property, which was being held there pending his release from SMU;

(40) On March 29, 2011, Plaintiff was served with notice of Immediate Segregation pending placement of Administrative Segregation (AS);

(41) On March 31, 2011, Plaintiff received a misconduct report indicating that Cpl. McRoberts had read and confiscated a large quantity of Plaintiff's personal writings during the March 28 search;

(42) There is no policy at TSCI authorizing staff to read inmates' personal papers;

(43) This same misconduct report indicated that Cpl. McRoberts had read and confiscated Plaintiff's personal address book;

(44) This same misconduct report indicated that Cpl. McRoberts did view and confiscated Plaintiff's personal photos;

(45) The photos confiscated depict males in swimwear in outdoor settings, complying with TSCI policy, which restricts only personal photos (non-published photos) depicting "subjects appearing in ... clothing which would be deemed unacceptable for open public appearance."

(46) The photos confiscated were displayed in a photo album, accompanied by a letter written by Warden Fred Britten indicating that they had been reviewed and deemed appropriate for receipt into the institution;

(47) To date, Plaintiff has not received any of these items back;

(48) On March 31, 2011 [sic], Plaintiff received notice that he was classified to forty-five [sic] days of Administrative Segregation;

(49) On April 8, 2011, a hearing was held before the Unit Disciplinary Committee regarding the misconduct report written as a result of the March 28 search and confiscation of Plaintiff's personal writings, address book, and photos;

(50) During the hearing, a bag of items confiscated by Cpl. McRoberts during the March 28 search was presented and reviewed by Plaintiff and IDC/UDC Chairman Pam Hillman;

(51) Plaintiff discovered at that time that Cpl. McRoberts had confiscated not only those items listed in the misconduct report, but also

a large quantity of Plaintiff's personal mail, legal paperwork, and family photos;

(52) At no time has Plaintiff received notice that the items presented at the disciplinary hearing had been removed from Plaintiff's property;

(53) After reviewing each item contained in the bag of confiscated items, IDC/UDC Chairman Pam Hillman indicated that all of the listed items are authorized for my possession and should not have been taken;

(54) IDC/UDC Chairman Pam Hillman dismissed all misconduct charges related to those items and indicated that they will be returned to Plaintiff;

(55) To date, Plaintiff has not received any of his property back;

(56) On March 23, 2011, mailroom staff read and held an incoming letter from one of Plaintiff's correspondents, Eric Angevine;

(57) On April 4, 2011, Defendant Fred Britten responded to Plaintiff's request, indicating that the letter from Eric Angevine held on March 23, 2011, was held because it "reflected an attempt by [Plaintiff] to obtain the addresses" of Plaintiff's "victim(s)";

(58) In a subsequent letter, Eric Angevine has indicated that the letter held on March 23, 2011, contained no information relative to Plaintiff's victim;

(59) On May 16, 2011, Defendant Fred Britten responded to a request, indicating that "the letter in question did, in fact, contain information about [Plaintiff's] victim," and that the information was shared with Department of Corrections Legal Department and was forwarded to the FBI;

(60) To date, Plaintiff has not had this letter delivered to him, nor has the letter been returned to its sender, Eric Angevine;

(61) Plaintiff is under no order of protection, nor any other order, to refrain from contacting his "victim";

(62) Plaintiff has at no time attempted to contact his "victim";

(63) The information Defendants allege Plaintiff is attempting to obtain is public information;

(64) There is no Federal or State law, nor any departmental policy, prohibiting Plaintiff from contacting his "victim," let alone obtaining information which [sic] would allow him to do so;

(65) Plaintiff's "victim" is currently aged twenty, and is a legal

adult under the laws of the State of Nebraska;

(66)   Contact with Plaintiff's "victim" at this time would be a legal action;

(67)   On March 27, 2011, Plaintiff attempted to obtain access to contact the Clerk of the United States District Court, in order to conduct legal affairs relative to this action;

(68)   On April 4, 2011, Plaintiff received notice that he was denied access to contact the Clerk of the United States District Court, due to a claim that "the Courts are not considered legal calls";

(69)   On April 30, 2011, Plaintiff attempted to obtain access to contact United States District Court Judge Joseph Bataillon, in order to conduct legal affairs relative to this action;

(70)   On May 5, 2011, Plaintiff received notice that he [sic] is denied access to contact Judge Bataillon, due to "judges are not considered confidential";

(71)   On May 17, 2011, Plaintiff received notice that he is being denied return of his personal address book, which [sic] was confiscated by Cpl. McRoberts during the March 28 search of Plaintiff's property, due to it containing "unauthorized information";

(72)   Plaintiff's address book contains nothing more than the names, addresses and phone numbers of friends and family;

(73)   On March 31, 2011, Plaintiff received a Notice of Returned Mail, indicating that a letter from Eric Angevine was returned;

(74)   The reason presented for why the letter was returned indicated that the "envelope [was] marked 'legal documents - open only in inmate's presence' Contents do do (sic) constitute legal mail.";

(75)   Upon complaint by Plaintiff regarding this item being read and returned, Defendant Michele Hillman indicated that the item was returned "because of the contents in the letter not because it was marked legal mail";

(76)   Upon complaint by Plaintiff regarding this item being read and returned, Defendant Fred Britten indicated that "the envelope marked 'legal documents' was returned as it contained items that were contrary to policy, not because of legal documents.";

(77)   The only items contained in the envelope, which [sic] was read and returned, was an Affidavit written and signed by Eric Angevine regarding the mishandling of his correspondences with Plaintiff, sent to Plaintiff in support of this legal action;

(78) On January 11, 2010, Lt. Ellinger conducted a search of Plaintiff's cell, during which he read and confiscated a significant quantity of Plaintiff's personal writings, a file containing multiple personal correspondences, and other miscellaneous documents;

(79) On January 22, 2010, Case Worker Carlson conducted a "blue box" search of Plaintiff's property and confiscated a significant quantity of Plaintiff's personal files, including dozens of files containing personal correspondences, personal writings, and other documents, due to these items exceeding the allotted four cubic feet of space that each inmate is authorized to possess;

(80) Plaintiff was informed that he must dispose of all of the items confiscated by both Lt. Ellinger and Case Worker Carlson by sending them out or throwing them away;

(81) After many months of back-and-forth, Plaintiff was informed that he no longer will be given access to dispose of these items;

(82) Upon further communication with staff, including Defendant Fred Britten, Plaintiff was informed that these items are part of a "pending investigation";

(83) On January 5, 2011, Case Manager Arnst indicated in an informal grievance response that these items are now part of the investigation for which Plaintiff's mail is being read and held at the request of the FBI and Defendant Jerry Bell;

(84) Upon information and belief, all of the documents being held have been read by Defendants Christopher Connelly, Lee Tinkler, Benny Noordhoek, and Jerry Bell;

(85) As a result of Defendants' actions, Plaintiff has been forced to abandon all free expression, both in his mail and in his personal writings, for fear that such will be read and confiscated;

(86) As a result of Defendants' actions, Plaintiff has been forced to avoid subjects of a personal nature within his mail, rendering his correspondences shallow and meaningless;

(87) In the elapsed time since October 13, 2010, the commencement of Defendants' actions, Plaintiff has lost contact with no less than six correspondents [sic], half of which can be directly attributed to Defendants' actions;

(88) Those correspondents [sic] who cannot be attributed to Defendants' actions, cannot so be due to an absolute cessation of contact with Plaintiff upon discovery of Defendants' actions;

  (89) Plaintiff has experienced mental anguish and emotional distress, in the form of insomnia, depression, anxiety, fear and humiliation, as a result of Defendants' actions;
  (90) Plaintiff has sought help from mental health professionals;
  (91) Plaintiff was placed on anti-depressant medications;
  (92) Plaintiff has experienced physical injuries, including stress-induced auto-depilation, as well as stretch [sic] marks and other physical maladies;
  (93) Plaintiff has experienced additional mental anguish and emotional distress resulting from the physical injuries experienced as a result of Defendants' actions, including but not limited to ridicule and rejection [sic] due to physical weight and unsightly stretch marks;
  (94) Plaintiff has experienced additional mental anguish and emotional distress resulting from the physical, emotional, and psychological side-effects of the anti-depressant medication he was forced to take in order to deal with the emotional distress and mental anguish caused by Defendants' actions.

(Filing no. 18 at CM/ECF pp. 3-10.)

## *FBI AGENT'S ASSERTION OF QUALIFIED IMMUNITY*

The FBI agent, Jerry Bell, filed a motion to dismiss (filing no. 48) and brief (filing no. 49) which among other things asserted qualified immunity. That motion was converted to a motion for summary judgment, the motion was granted, and Payne's claims against Bell (and implicitly the federal government) were dismissed with prejudice. (Filing no. 83.) No one appealed and that decision stands. Accordingly, the remand order requires nothing more of me regarding Jerry Bell. He is no longer an active party.

## *STATE EMPLOYEES' ASSERTION OF QUALIFIED IMMUNITY*

I turn next to the Defendants who are state employees. Essentially, there are two facets to Payne's claim. They are: (1) the Defendants monitored (opened and read) his ordinary mail without a warrant; and (2) the Defendants held several items

of incoming and outgoing mail for a long period of time and continue to hold those items without justification. To each of those facets, the Defendants asserted the defense of qualified immunity by way of a motion to dismiss under Fed. R.Civ.P. 12(b)(6) (filing no. 37) and they explicitly directed their motion at both facets of Payne's claim in their brief. (Filing no. 38 at CM/ECF pp. 5-6.)

I next discuss the first facet of Payne's claim. Previously, it was determined that the Defendants were entitled to qualified immunity on the allegation that Defendants monitored his mail without a warrant because the law allowed such monitoring. (Filing no. 83 at CM/ECF pp. 10-13.) As I read the opinion of the Court of Appeals, that decision was affirmed. *Payne*, 749 F.3d at 699-700, (affirming in part; stating that "On September 19, 2012, the district court granted summary judgment to the officials on the 'First and Fourth Amendment claims relating to the censoring and monitoring of [Payne's] mail as part of a criminal investigation.'"; "vacat[ing] the district's *partial denial* of the officials' motion for summary judgment . . . .") (emphasis supplied).

Even if that were not so, it is clear that prison officials may open and read a prisoner's regular mail for security reasons. "While prisoners have a right to send and receive mail, prison officials have a legitimate interest in monitoring that mail for security reasons." *Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1026 (8th Cir. 2004); *Thongvanh v. Thalacker*, 17 F.3d 256, 258-59 (8th Cir. 1994) (stating that the prison's responsibility to maintain order may include reading incoming and outgoing mail). It is clear from the face of Payne's pleadings that the prison was monitoring his mail for security reasons, although Plaintiff believed that such monitoring was improper. Since there is no dispute that Defendants were endeavoring to carry out their security obligations, there is no basis for finding that the Defendants were acting for some other improper purpose.

Therefore, as to the first facet of Payne's claim–the Defendants monitored (opened and read) his ordinary mail without a warrant–the Defendants are entitled to

qualified immunity. This is because the Defendants had the legal right to do what they did–monitor, open and read his ordinary mail for security purposes.

Finally, I turn to the second facet of the Payne's claim– the Defendants held several items of incoming and outgoing mail for a long period of time and continue to hold those items without justification. Payne specifically alleges in his amended complaint (see, for example, paragraphs V 6, 7, 8, 9, 56, 57, 58, and 62) that none of the several items of correspondence held by Defendants contain anything unlawful or associated with Payne's victim. In contrast, Defendants argue in their brief regarding their motion to dismiss on the basis of qualified immunity that the mail being held is "'evidence of illegal activity'" and as a result they are "justified in holding and refusing to process the mail" at the request of the FBI. (Filing no. 38 at CM/ECF p. 6.) As a result, the true character of the correspondence is disputed.

While I have no doubt that the Defendants could hold mail for a short period of time[1] based upon the request of an outside law enforcement agency without determining whether the mail actually contained evidence of a crime, it was clearly established by the time the Defendants acted that prison authorities cannot hold mail indefinitely by exercising their authority to screen an inmate's mail "overzealously."[2] *See*, *e.g.*, *Kaden v. Slykhuis*, 651 F.3d 966, 969 (8th Cir.2011) (per curiam) ("[I]f a valid prison regulation is applied to particular mail items in such a way as to negate the legitimate penological interest, the regulation may be unconstitutional as applied

---

[1] The Defendants have now held this mail for years.

[2] Even without "overzealousness," this has been the law for over 35 years. *See*, *e.g.*, *Bolding v. Holshouser*, 575 F.2d 461, 464-465 (4th Cir. 1978) (unreasonable delay in mail delivery states a cognizable federal claim); *Dawson v. Kendrick*, 527 F. Supp. 1252, 1309 (S.D.W.Va. 1981) (an unreasonable and extended delay or deliberate refusal to post outgoing prisoner mail may constitute a deprivation of a prisoner's First, Sixth and Fourteenth Amendment rights in the absence of a valid interest in the maintenance of security).

to those items.... On appeal, we must independently review the evidence to determine whether [the] decision to apply the regulation and withhold [the particular mail items] was an exaggerated response to prison concerns and therefore unconstitutional as applied.") (internal citations and quotation marks omitted). The *Kayden* opinion relied upon Eighth Circuit authority dating back to 1997. Thus, while the law was clearly established at the relevant time, a dispute of fact precludes me from determining whether the Defendants violated that clearly established law.

In summary, there is no way for me to determine the validity of the continued long duration seizure of Payne's regular mail without examining the mail itself. The mail is not before me. Therefore, the motion to dismiss under Fed. R.Civ.P. 12(b)(6) and pursuant to the defense of qualified immunity will be denied.

IT IS ORDERED the motion to dismiss (filing no. 37) construed to be applicable to all Defendants who are or were state employees is denied with respect to the second facet of Payne's claim–that the Defendants held several items of incoming and outgoing mail for a long period of time and continue to hold those items without justification.[3] The remaining Defendants have 30 days to answer or plead further.

August 15, 2014          BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

[3] To be clear: (1) Jerry Bell is no longer an active party; and (2) the state Defendants have qualified immunity on the first facet of Payne's claim–the Defendants monitored (opened and read) his ordinary mail without a warrant.